Paul D. BOWSHER *v.* Tom F. DIGBY, Judge

5-4393                                              422 S. W. 2d 671

Opinion delivered January 8, 1968

*Harry E. McDermott Jr.,* for petitioner.

*Darrell Dover,* for respondent.

Carleton Harris, Chief Justice. This litigation relates to the constitutionality of Act 101 of the Arkansas General Assembly of 1963 (Ark. Stat. Ann. § 27-2501 through 27-2506 [Repl. 1962]). Rector-Phillips-Morse, Inc., hereinafter called Rector, instituted suit in the Pulaski County Circuit Court (3rd Division) against Paul D. Bowsher, petitioner herein, asserting that it was a licensed real estate broker, engaged in the business, *inter alia,* of selling land belonging to others for a commission. The complaint alleged that Bowsher, a resident of the state of Ohio, was the owner of certain lands lying in Pulaski and Perry Counties, and that Bowsher

had authorized the plaintiff to sell this land, and had agreed that if an offer were obtained for an option to purchase at a price not less than $100,000.00, petitioner would accept the offer, and grant the option "provided that the option would not be for more than six (6) months and further provided that defendant would receive at least $3,500.00 consideration for the granting of the option to be his whether or not the option was exercised."

The complaint further asserts that the plaintiff obtained an offer in compliance with these requirements, and submitted same to petitioner, but that he refused to accept the offer, and had since conveyed the property to a third party, thereby breaching his agreement with Rector. The prayer sought a judgment in the amount of $10,000.00, or whatever amount the proof might reflect it entitled to under its contract. A copy of the complaint and summons was sent by the sheriff of Pulaski County to Bowsher in Ohio by way of certified mail in compliance with the statute, heretofore mentioned. Thereafter, Bowsher appeared specially for the purpose of challenging the jurisdiction of the court of his person under the service of said summons, and he prayed that the service be quashed. Rector filed its response, contending that the court had personal jurisdiction under the statute here in question, because of Bowsher's ownership of the real estate. Subsequently, Bowsher replied, contending that the application of the statute was unconstitutional under the due process and equal protection clauses of the state and federal constitutions, it being his position that the mere ownership of land was not sufficient to give a court jurisdiction of a cause of action allegedly arising out of that ownership, without there being other contacts, or business transactions, within the state. On hearing, the court overruled Bowsher's motion, and directed him to plead further. Thereafter, Bowsher filed his petition for writ of prohibition wherein we are requested to probibit the Pulaski Circuit Court from proceeding further in this cause. The question, therefore,

which confronts us is whether, under the facts set out in the complaint, the Pulaski Circuit Court has personal jurisdiction of the non-resident defendant.

The pertinent portion of Section 27-2502 provides as follows:

"1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in this State;

(c) causing tortious injury by an act or omission in this State;

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State;

(e) having an interest in, using, or possessing real property in this state; or

(f) contracting to insure any person, property, or risk located within this State at the time of contracting.

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him."

The instant action is not based in any wise upon a theory of jurisdiction arising from Subsection (a), but respondent relies entirely on Subsection (e). We agree that prior to the passage of Act 101 of 1963, known as the long-arm statute, the court would not have had any jurisdiction over the petitioner under the ground herein

asserted; it would have been necessary to establish that the petitioner was doing business in the state of Arkansas. Petitioner's argument is that the constitution guarantees immunity from a suit in a foreign state unless the non-resident has established minimal contacts within the state, and the ownership of land, standing alone, is not sufficient to grant jurisdiction.

Apparently, at least three other states, Illinois, Wisconsin, and Pennsylvania, have passed long-arm statutes which bear a provision comparable to our own Subsection (e), though it appears that the Pennsylvania statute covers only actions for physical injuries arising from the property. Our own statute is quite similar to that of Illinois. One case has been reported. Petitioner says:

"There have been no reported cases in any state, including these three states, where a Court has held that the bare ownership of real estate is sufficient to give Court jurisdiction."

It is contended that the Illinois case of *Porter* v. *Nahas,* 182 N. E. 2d 915 (1962), cited by respondent, is not in point because of the difference in the facts. There, the owner of a Chicago apartment building sued former tenants to recover damages alleged to have been occasioned by the tenants' use of the apartment in violation of the terms of the lease. Personal service was had on the defendants in New York. The defendants appeared specially, and moved to quash the service of summons, and the trial court upheld the defendants' position, and granted the motion. On appeal, the Appellate Court of Illinois, First District, Second Division, reversed the trial court, stating:

"* * * We think that the cause of action comes within Sec. 17 (1) (c) which embraces all causes of action arising from 'the ownership, use, or possession of any real estate situated in this State.'[1] The complaint

---

[1] It will be noted that this language, though not identical in wording with our Subsection (e), has the same meaning and effect.

alleges that the defendants were in 'possession' of an apartment on the first floor of plaintiff's building in Chicago for four years under the terms of a two-year lease, which was renewed for an additional two years, that on its termination defendants surrendered possession of the apartment in badly damaged condition in violation of their express obligation under the lease to return the premises in as good condition as received, and that plaintiff has the right to recover the damages thereby suffered and attorney's fees.

"It is to be noted that the requirements for jurisdiction are in the disjunctive. Section 17 (1) (c) applies if any one or more of the three grounds for jurisdiction exists, namely, 'ownership,' 'use' or 'possession.' A tenant under a lease of real estate is in possession and using the real estate."

Here, though petitioner has not lived in this state (which, appellant says, distinguishes the instant case from *Porter*), he does own real property within the boundaries of Arkansas, and it seems logical to presume that he has paid real estate taxes, and, as pointed out in the brief for respondent, undoubtedly looked to Arkansas law and our courts for the protection of his interest in this property. Quite a lengthy article appears in Volume 73, Harvard Law Review (1959-60), on "The Due Process Clause and Personal Jurisdiction." Included in this article is a short discussion which is pertinent to the instant case, and which is found at Pages 947-48, as follows:

"The ownership, use, or possession of real property has, in a few states, been treated by statute as a sufficient basis of jurisdiction in personam for certain actions related to the property. Decisions under such a statute have been reported only in Pennsylvania,[1A] where the statutory provision covers only actions for physical injuries arising from the property. The Penn-

---

[1A] *Porter* v. *Nahas*, *supra*, was decided subsequent to the publication of this article.

sylvania law is thus nothing more than a limited single-act tort statute. Presenting more constitutional difficulty is a statute like that of Illinois, which allows the property right to be a sufficient basis of jurisdiction for any action related to the property. Such a generalized provision would, however, also appear to be constitutional, even in the extreme situation in which a non-resident owner and another non-resident contract outside the state with respect to the property, because of the state's recognized interest in the title to land within its borders in addition to the defendant's substantial relationship with the state.''

While the validity of the Illinois statute has not been before the United States Supreme Court, that court has furnished guidelines to be followed in the constitutional exercise of personal jurisdiction over non-residents. We refer to the cases, *inter alia,* of *International Shoe Co.* v. *Washington,* 326 U. S. 310 (1945), and *McGee* v. *International Life Ins. Co.,* 355 U. S. 220 (1957)[2]. In *International Shoe,* it was held that a course of activity, consisting merely of the solicitation of business by salesmen, admittedly less than the doing of business in Washington, was sufficient to enable that state to subject the foreign corporation to personal jurisdiction based on constructive service. The court said that ''due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' ''

In *McGee* v. *International Life Insurance Company, supra,* a resident of California was issued a policy of insurance by a foreign insurer. Upon his death, the ben-

---

[2]In *Hanson* v. *Dencka,* 357 U. S. 235 (1958), the court held that a Florida state court lacked *in personam* jurisdiction over a foreign trust company, because sufficient contacts were not established by the evidence.

eficiary was successful in a suit in California against the defendant, a Texas insurance company (which had assumed the obligation of the original insurance company). The company was not served in California, and the jurisdiction of the California court was based on a state statute subjecting foreign corporations to suit in that state on insurance contracts with residents of California, even though such companies could not be served with process within the borders of the state. A judgment was obtained, and subsequently, the beneficiary instituted suit on the California judgment in a Texas state court, but was denied relief on the ground that the California judgment was void under the Fourteenth Amendment because of lack of service upon the company within California. The Court of Civil Appeals of Texas affirmed, but the United States Supreme Court reversed the decision, holding that the service had been sufficient for the purpose of the due process clause, and that the beneficiary's suit had been based upon a contract which had substantial connection with California.

Let us now turn to our own court decisions. In *American Farmers Insurance Company of Phoenix, Arizona* v. *Thomason, Guardian,* 217 Ark. 705, 235 S. W. 2d 37, Dr. Robert A. Leflar, Distinguished Professor of Law (at that time an Associate Justice of this court), mentioned that, following the holding in *International Shoe,* a statute, Act 347 of 1947, Ark. Stat. Ann. § 27-340 (1947), providing for service in Arkansas on this theory was enacted by the General Assembly. This court passed upon this statute in the case of *Rodgers* v. *Howard, Judge,* 215 Ark. 43, 219 S. W. 2d 240, holding that Act 347 was not intended to change the rule concerning the breaking of the journey of interstate shipments as announced in earlier cases. Less than three months later, this court, in *Chapman Chemical Company* v. *Taylor, et al,* 215 Ark. 630, 222 S. W. 2d 820, held that service on the appellant, a foreign corporation under the provisions of Act 347, was valid. Some confusion resulted, it appearing that possibly the two cases were somewhat

in conflict, and in *Aldridge* v. *Marco Chemical Company,*
234 Ark. 1080, 356 S. W. 2d 615, we held service good on
Marco Chemical Company, a foreign corporation by
virtue of service under Act .347, and, as to any conflict
between *Rodgers* and *Chapman,* added:

"* * * While we think the facts in this case are
distinguishable from the facts in the *Rodgers* case, we
do not predicate, nor base this opinion, upon that prem-
ise. Actually, we are of the view that the *Chapman* case,
in effect, overruled the *Rodgers* case, though it did not
specifically so state. Therefore, as a matter of removing
all doubt, we explicitly state that the *Rodgers* case can
no longer be relied upon as authority for foreign cor-
porations to evade the jurisdiction of our courts in
factual situations similar to the one at bar.''

It is thus clear that this court has taken the liberal
view.

Appellant asserts that Act 101 is discriminatory as
between residents and non-residents, and is therefore un-
constitutional. In his brief, he states:

"* * * This alleged cause of action is .transitory
against a resident. It can be brought in any county in
which the defendant resides or can be found. However
under this new long-arm statute the bare ownership of
land in any county gives any other county in the state
jurisdiction. Thus this suit could have been brought in
any county in Arkansas.''

Appellant then cites the case of *Forsgren* v. *Gillioz,*
110 F. Supp. 647, an action based on contract, wherein
Judge Miller stated that a construction of Act 347 of
the General Assembly of 1947 (heretofore discussed),
which would render it applicable to contract actions
would be unconstitutional because it would discriminate

between residents and non-residents as to venue.[3] Of
course, this holding by the learned federal judge related
only to our earlier act, and, in fact, was rendered ten
years before the passage of Act 101. Subsection (E) of
Section 1 of Act 101 sets forth a method for the forum
to comply with any objection as to venue which a non-
resident might have, by providing that when the court
finds that in the interest of substantial justice the action
should be heard in another forum, the court may stay
or dismiss the action in whole or in part on any condi-
tions that may be just. In the instant litigation, it would
appear that the action was commenced in the logical
county, for it was brought in Pulaski County, where a
part of the land in question is located.[4] While the site
of the action is not controlled by Ark. Stat. Ann. § 27-
609 (Repl. 1962), since it is not an action for the re-
covery or partition of real property, for an injury to
real property, or for the sale of such property under a
mortgage, lien, or other encumbrance, the cause *is* based
on a purported transaction arising out of the ownership
of real estate partly located in Pulaski County. It may
be that petitioner will be somewhat inconvenienced by
having to defend an action at any place other than his
home county in Ohio, but it would not appear that he
will be any more inconvenienced by being made a de-
fendant in Pulaski County than if he were made a de-
fendant in any other county in the state. As Justice

[3]The court held that, as to personal injury and personal property
damage actions, the act was constitutional, since it provided substant-
ially the same venue provisions to non-residents as are applied to
residents. This decision was rendered in March, 1953, and in No-
vember, 1953, our court, in *Hot Springs School Dist. No. 6 v. Surface
Combustion Corp.*, 222 Ark. 591, 261 S. W. 2d 769, held that Act
347 (Sections 2 and 3) applies to actions on contact in certain in-
stances.

[4]It also appears that Rector-Phillips-Morse, Inc., has its place
of business in Little Rock, Pulaski County. This fact is mentioned in
respondent's brief, and is not disputed by petitioner. However, the
pleadings do not, apparently through oversight, reflect this particu-
lar fact, and it is accordingly not considered in reaching our conclu-
sions.

Oliver Wendell Holmes stated in his dissent in *Power Manufacturing Co.* v. *Saunders,* 274 U. S. 490 (1927):

"In order to enter into most of the relations of life people have to give up some of their constitutional rights. If a man makes a contract he gives up the constitutional right that previously he had to be free from the hamper that he puts upon himself.* * *

"* * * A foreign corporation merely doing business in the state and having its works elsewhere will be more or less inconvenienced by being sued anywhere away from its headquarters, but the difference to it between one county and another is likely to be less than it will be to a corporation having its headquarters in the state."

Petitioner also asserts that the subsection here in question is unconstitutional under the Declaration of Rights, Article 2 of the Constitution of Arkansas, asserting that that subsection is in conflict with Sections 2, 3 and 8. Section 2 provides that all men are created equally free and independent, and have certain inherent rights, among these being the acquirement, possession and protection of property. Section 3 states that all persons are equal before the law, and Section 8 deals with criminal charges (not involved in this litigation). We find no merit in this contention.

Summarizing, petitioner owns real estate in this state. He depends upon the laws and courts of Arkansas for protection of this property and his rights therein. He allegedly entered into a contract relating to this particular property.[5] Arkansas has an interest in providing an effective means of redress for its residents against persons or corporations outside the state who allegedly have violated a contract relating to this realty.

---

[5] The question of whether the ownership of real property in this state is sufficient to confer personal jurisdiction in an action not related to any transaction concerning such real estate is not at issue in this cause.

Many times, necessary witnesses will be found in the locality of the party alleging a breach. While there may be inconvenience to petitioner in defending the suit in this state, there would be as much inconvenience to respondent in bringing the action in Ohio.

Writ denied.

FOGLEMAN, J., not participating.